UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x   **MEMORANDUM AND ORDER**

IN RE HANGER ORTHOPEDIC GROUP,
INC. SECURITIES LITIGATION

Case No. 04-CV-2585 (FB) (RLM)
Case No. 04-CV-2681 (FB) (RLM)
Case No. 04-CV-2736 (FB) (RLM)
Case No. 04-CV-2826 (FB) (RLM)

------------------------------------------------x   (CONSOLIDATED)

*Appearances:*

*For the Plaintiffs:*
SAMUEL H. RUDMAN, ESQ.
DAVID A. ROSENFELD, ESQ.
MARIO ALBA, JR., ESQ.
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
200 Broadhollow Road, Suite 406
Melville, NY 11747

BARRY WEPRIN, ESQ.
PETER SLOANE, ESQ.
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119

*For the Defendants:*
PAUL H. DAWES, ESQ.
PATRICK E. GIBBS, ESQ.
KALAMA M. LUI-KWAN, ESQ.
Latham & Watkins LLP
135 Commonwealth Drive
Menlo Park, CA 94025

LAURIE B. SMILAN, ESQ.
J. CHRISTIAN WORD, ESQ.
GREGORY A. HARRIS, ESQ.
Latham & Watkins LLP
Two Freedom Square
11955 Freedom Drive, Suite 500
Reston, VA 20190-5651

**BLOCK, Senior District Judge:**

In this putative class action, plaintiffs allege that defendant Hanger Orthopedic Group, Inc. ("Hanger") and certain of its officers and directors (collectively, "the individual defendants") violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. §§ 78i(b) & 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. All defendants move, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the District of Maryland. For the following reasons, the motion is granted.

## BACKGROUND

### A. Plaintiffs' Claims[1]

This action consists of four putative class actions against Hanger and the three individual defendants: Ivan R. Sabel ("Sabel"), Hanger's Chief Executive Officer and Chairman of its Board of Directors; George E. McHenry ("McHenry"), Hanger's Chief Financial Officer and Executive Vice President; and Thomas F. Kirk ("Kirk"), Hanger's President, Chief Operating Officer and one of its Directors. By order dated November 1, 2004, Magistrate Judge Mann consolidated the actions and named Joe Campagnulo, Jr., Les Bronte, Twist Partners, LLP, Ed and Aileen Stiehle, and Thomas Pyles as lead plaintiffs. Although the class has not yet been certified, the lead plaintiffs seek to represent "all those who purchased the securities of Hanger between March 13, 2002 and September 15, 2004 inclusive and who were damaged thereby." CAC ¶ 34.

Hanger is "the world's premier provider of orthotic and prosthetic patient-care services," CAC ¶ 1, meaning, in lay terms, that it designs, makes and fits braces, artificial limbs and other like devices. It owns and operates over 580 patient-care facilities throughout the United States. As with many providers in the health-care industry, its revenues depend largely on payments from either private insurers or government programs such as Medicaid, Medicare and the Veterans Administration.

The CAC alleges that, to inflate its revenues, Hanger engaged in "systematic and flagrant billing fraud at its patient care facilities." CAC ¶ 51. The CAC details the

---

[1]The following facts, provided solely as background, are taken from the lead plaintiffs' Consolidated Amended Complaint ("CAC").

2

alleged billing fraud (which included forging prescriptions, submitting improper billing codes, back-dating billing documents and billing insurers for items not provided) at a Hanger facility in West Hempstead, New York; it also alleges that similar fraud took place at Hanger facilities in Brooklyn, North Carolina, Colorado, Pennsylvania and California. The CAC alleges that Hanger and the individual defendants "were aware of, or recklessly disregarded," these fraudulent billing practices. CAC ¶ 61.

In essence, the lead plaintiffs claim that defendants' knowledge or reckless disregard of the widespread billing fraud rendered certain statements in Hanger's financial statements and press releases false or misleading. The allegedly false or misleading statements relate principally to (1) statements regarding Hanger's revenues and (2) assurances that the company took steps to prevent billing fraud and ensure compliance with federal, state and local regulations.

## B. Facts Relevant to Motion to Transfer[2]

Hanger is headquartered in Bethesda, Maryland. Kirk and McHenry reside in Maryland, while Sabel resides nearby in Washington, D.C.; all three work out of the company's Bethesda headquarters. According to plaintiffs' counsel, most of the lead plaintiffs reside in Florida; none resides in New York.

All of the financial statements and press releases at issue were prepared in Bethesda by Hanger personnel at the company's headquarters. The financial information

---

[2]The following undisputed facts are taken from the parties' memoranda of law and supporting affidavits, *see Photoactive Productions, Inc. v. AL-OR Int'l, Ltd.*, 99 F. Supp. 2d 281, 292 (E.D.N.Y. 2000) (noting that party seeking transfer "must support the application with an affidavit containing detailed factual statements"), and from counsels' statements at oral argument, held on February 15, 2006.

3

contained in those documents was based on the work of Hanger's accounting staff, all of whom are located at the company's headquarters. In addition, most of Hanger's internal auditors and executive managers are either located in Maryland "or frequently available there." McHenry Declaration ¶ 8. In addition, the "vast majority" of the documents on which the statements were based are kept in Maryland, as are Hanger's e-mail servers, electronic databases and central accounting system (known as "OPS"). *Id.* ¶¶ 6-7.

Defendants do not dispute that documents related to the alleged billing fraud are located at the individual facilities, including the West Hempstead facility. In addition, the lead plaintiffs have identified as "key witnesses" Kendall McDaniel, the former office administrator at the West Hempstead facility, who "blew the whistle" on the fraud there; Jerry Ritieni, the former manager of the West Hempstead facility; David Zwicker, the former regional manager of Hanger's New York region; and Michelle Hickman, an office administrator at Hanger's Brooklyn facility. The lead plaintiffs also allude to "others at the West Hempstead and other facilities in New York State that participated in the [billing] fraud." Pls' Mem. of Law at 6.

Defendants aver, and plaintiffs do not dispute, that the West Hempstead facility is only one of almost 600 Hanger facilities nationwide and, during the relevant time period, accounted for "less than 0.5% of the Company's net sales." Lui-Kwan Declaration, Ex. 8. At oral argument, plaintiffs' counsel conceded that to make out their securities-fraud claims, plaintiffs must demonstrate billing fraud on a wider scale; therefore, they intend to offer evidence of billing fraud at other Hanger facilities nationwide. As noted, the CAC alleges that, in addition to New York, such fraud occurred in North Carolina, Colorado,

Pennsylvania and California.

## ANALYSIS

### A. General Principles

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). Although the Second Circuit has not catalogued all the considerations that should inform the exercise of that discretion, district courts in the circuit "generally consider several factors, including: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases).[3] The party seeking transfer has the burden of making a "clear-cut

---

[3] A threshold inquiry is whether venue is proper in the transferee forum. *See Blass v. Capital Int'l Sec. Group*, 2001 WL 301137, at *4 (E.D.N.Y. Mar. 23, 2001). As Hanger does business in the Eastern District of New York and in the District of Maryland, it is undisputed that venue is proper in both places. *See* 15 U.S.C. § 78aa (providing that venue under the '34 Act is proper, *inter alia*, wherever the defendant "transacts business").

showing" that transfer is warranted in light of these factors. *O'Hopp v. Contifinancial Corp.*, 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000) (citing, *inter alia*, *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978)).

There is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered. *See In re Geopharma, Inc. Sec. Litig.*, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005). Nevertheless, as a practical matter, such transfers are routine. *See, e.g., O'Hopp*, 88 F. Supp. 2d at 38; *Blass*, 2001 WL 301137, at *5-6; *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005); *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953 (S.D.N.Y. May 12, 2003); *Greenwood Partners v. New Frontier Media, Inc.*, 2000 WL 278086 (S.D.N.Y. Mar. 14, 2000); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315 (S.D.N.Y. 1999); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397 (S.D.N.Y. 1998); *IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.*, 730 F. Supp. 1278 (S.D.N.Y. 1990). Since motions to transfer are decided on a case-by-case basis, there is no single explanation for this result; rather, as explained below, several factors usually lean in favor of transfer.

## B. Application of the Factors

### 1. *Convenience of Witnesses*

The convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum. *See Viacom Int'l, Inc. v. Melvin Simon Prods.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). Defendants have identified a number of non-party witnesses – including Hanger's non-party officers and management, non-party directors, accounting and billing employees, and internal and

outside auditors – who are located in or near the District of Maryland. Maryland would, of course, be the more convenient forum for these witnesses.

Plaintiffs, in turn, have identified as their key non-party witnesses former and current Hanger employees at the West Hempstead facility and elsewhere in New York; New York would obviously be the more convenient forum for these witnesses. As noted, however, plaintiffs' allegations of billing fraud are not limited to New York. The CAC alleges that the fraud was nationwide in scope, occurring at facilities in North Carolina, Colorado, Pennsylvania and California; at oral argument, plaintiffs' counsel confirmed that part of their case will involve proving these allegations through witnesses from those states.

Taken as a group, plaintiffs' non-party witnesses will be inconvenienced whether the case proceeds in New York or Maryland. Given that some non-party witnesses will be inconvenienced, transfer would at least minimize that inconvenience. Thus, this factor favors transfer; at worst, it is neutral.

## 2. *Convenience of the Parties*

Since none of the lead plaintiffs resides in New York, they cannot claim that New York is the more convenient forum for them. Moreover, the lead plaintiffs are simply representatives of a putative class that will likely be "geographically dispersed throughout the United States." *Blass*, 2001 WL 301137, at *5. As with plaintiffs' non-party witnesses, some (if not most) of the plaintiff class will be inconvenienced whether the case proceeds in New York or Maryland.

The defendants, by contrast, are all located in or near the District of

7

Maryland; therefore, they have a compelling claim that Maryland is the more convenient forum for them. The claim is all the more compelling because the individual defendants form the core of Hanger's senior management; trial in New York carries a real risk of disrupting company operations. *See In re Nematron Corp.*, 30 F. Supp. 2d at 404 (transferring case to avoid "significant disruption to the operations of [defendants'] businesses"). And because "trials in securities class actions focus almost entirely on the defendants' conduct," defendants' presence at trial is crucial, while "matters within any particular plaintiff's individual knowledge would not be particularly relevant to the claims and likely defenses." *Id.* at 402. This factor weighs strongly in favor of transfer.

### 3. Locus of Operative Facts

As in any securities-fraud action, plaintiffs' claims are based on defendants' alleged misrepresentations and omissions, all of which originated in Maryland. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *In re Nematron Corp.*, 30 F. Supp. 2d at 404 (citation and internal quotation marks omitted). Plaintiffs argue that part of their case involves proving the alleged billing fraud, some of which occurred in New York. Again, however, plaintiffs allege and intend to prove that similar fraud occurred in other states; the case bears no more connection to New York than to any of these other states. Considering all the underlying facts, this factor weighs in favor of transfer. *Cf. Blass*, 2001 WL 301137, at *5 (transferring securities-fraud class action to Florida in part because misrepresentations allegedly made in New York "pale in magnitude to the misrepresentations and omissions attributable to defendants' alleged activities in Florida").

### 4. Availability of Process for Unwilling Witnesses

As noted, plaintiffs plan to call non-party witnesses from New York and defendants plan to call non-party witnesses from Maryland; neither would be subject to process in the other forum. *See* Fed. R. Civ. P. 45(c)(3)(B)(ii) (limiting to 100 miles district courts' power to compel nonparty witnesses to travel). Defendants' non-party witnesses are largely current Hanger employers, for whom defendants could presumably arrange travel to New York. While plaintiffs claim that they enjoy no corresponding influence over their non-party witnesses, they offer nothing other than speculation that their non-party witnesses will be unwilling to travel to Maryland for trial. Even if plaintiffs offered such evidence, they would face an additional hurdle: neither this Court nor the District of Maryland can compel the attendance of non-party witnesses who can testify about billing fraud occurring elsewhere in the country.

Two practical considerations mitigate the impact of this factor. First, the parties always have "the option of videotaping testimony of witnesses unwilling to travel." *Dealtime.com*, 123 F. Supp. 2d at 757; *see also* Fed. R. Civ. P. 32(a)(3)(B) (authorizing use at trial of depositions of witnesses located more than 100 miles from place of trial). Second, as plaintiffs' counsel admitted at oral argument, securities-fraud class actions regularly settle and, therefore, rarely go to trial; thus, the issue of unwilling trial witnesses is largely academic.

Overall, this factor is neutral. At most, it weighs slightly against transfer.

## 5. Location of Physical Evidence

"Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession," *Blass*, 2001 WL 301137, at *6; that is sure to be the case here. This factor is counterbalanced somewhat by the documents relating to the underlying billing fraud, which are presumably located at the individual Hanger facilities in New York and elsewhere; moreover, this factor, while still relevant, is of diminished importance "in the modern age of copying." *In re Glenayre Techs., Inc. Sec. Litig.*, 982 F. Supp. 294, 300 (S.D.N.Y. 1997). On the whole, this factor does not favor either New York or Maryland.

## 6. Relative Means of the Parties

"Where an apparent disparity exists between the parties, such as when an individual sues a large corporation, the court should consider the relative means of the parties." *Blass*, 2001 WL 301137, at *6. Plaintiffs do not argue that their means are so limited as to require such consideration.

## 7. Familiarity with Governing Law

Plaintiffs raise only federal claims, with which this Court and the District of Maryland are equally familiar. As a result, this factor does not favor either New York or Maryland.

## 8. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). "However,

when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case, that weight is diminished." *Cali v. East Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 292 (E.D.N.Y. 2001). Additionally, "the plaintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action," *Warrick v. General Elec. Co. (In re Warrick)*, 70 F.3d 736, 741 n.7 (2d Cir. 1995); however, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

Here, none of the named plaintiffs resides in New York; moreover, they seek to represent a class dispersed throughout the United States. Finally, as noted *supra* Part B.3., the case's only connection to New York is the claim that billing fraud occurred here, a connection that is no stronger here than it is in any other state where such fraud allegedly occurred. For these reasons, the plaintiffs' choice of forum is entitled to significantly diminished weight.

### 9. Interests of Justice/Trial Efficiency

Defendants point out – and plaintiffs do not dispute – that the Eastern District of New York's docket is significantly more congested than the District of Maryland's: As of September 30, 2005, the number of pending cases (civil and criminal) per active judge in the Eastern District was 622; in the District of Maryland, it was only 377. *See* Administrative Office of the United States Courts, *Federal Court Management Statistics* ("FCMS"), *available at* http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited Feb. 21,

11

2006).[4] Although docket congestion is "insufficient on its own to support a transfer motion," *In re Nematron Corp.*, 30 F. Supp. 2d at 406, it "is a proper factor for the Court to consider and is accorded some weight." *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991). Since docket congestion is not the sole basis for defendants' motion and plaintiffs offer no competing concerns, this factor weighs in favor of transfer; however, the Court gives this factor minimal weight because the congestion only marginally increases the median disposition time (11.6 months versus 8.9 months) for a civil case. *See* FCMS.[5]

## CONCLUSION

The present action bears many hallmarks of a typical securities-fraud case: it is a putative class action brought against Hanger and its principal officers; it is based on alleged misrepresentations in, and omissions from, statements originating at Hanger's Maryland headquarters; and most of the witnesses and documents relating to those statements are located in Maryland. As explained above, these factors all weigh in favor of transfer.

The plaintiffs argue that this case is distinguishable from the typical securities-fraud class action because part of the alleged billing fraud underlying their claims took place in New York. The Court concludes that this argument is insufficient to

---

[4]FCMS does not take into account the impact of senior judges on a court's caseload. According to the Court's calculations, senior judges reduced the caseload per judge to 444 in the Eastern District and to 314 in the District of Maryland.

[5]For cases not disposed of prior to trial, the difference is greater, but not significantly so: For civil cases, the median time between filing and trial is 30.3 months in the Eastern District and 26.0 months in the District of Maryland. *See* FCMS.

justify keeping the case. Whatever its basis, this case remains a securities-fraud action, which requires plaintiffs to prove that the defendants knowingly or recklessly disregarded the billing fraud and, as a result, issued statements that were false or misleading; as noted, the "center of gravity" of these operative facts is Maryland. *Cf. Langley Partners*, 2005 WL 2482527, at *2 (holding that "center of gravity" of securities-fraud claim based on stock-purchase agreement executed in New York remained in California, where defendant issued its allegedly false or misleading financial statements). That some of the alleged billing fraud occurred in New York does not shift this center of gravity; as explained above, New York bears no more connection to the case than the other states where billing fraud allegedly occurred. *Cf. In re Nematron*, 30 F. Supp. at 404 ("Michigan bears a much more intimate connection to the events underpinning this case than does New York, which has no greater connection than any other district in which any potential class member resides.").

In sum, having considered the relevant factors, the Court concludes that defendants have made the requisite "clear-cut showing," *O'Hopp*, 88 F. Supp. 2d at 35, that transfer is warranted. Defendants' motion is granted and the Clerk is directed to transfer the case, including all actions consolidated thereunder, to the District of Maryland.

**SO ORDERED.**

                                                     FB
                                       FREDERIC BLOCK
                                       United States Senior District Judge

Brooklyn, New York
February 28, 2006